**CONTRACTS: OFFICERS INTEREST: CITY:** Officer and employee of nonprofit corporation that provides public access cable television services in connection with city franchise and contract is not disqualified from serving as mayor or council member, but must abstain from participating in city actions involving franchise. Op. Atty. Gen. 90a-1, July 12, 1973 superceded. Minn. Stat. §§ 238.15 and 471.87 (1996).

90e
(Cr. Ref. 90a-1)

August 25, 1997

Maren Swanson
City Attorney
City of Northfield
105 East Fifth Street
PO Box 240
Northfield, MN 55057

Dear Ms. Swanson:

From the information provided to us in your letters to the office of the Attorney General, we have ascertained the following:

## FACTS

The City of Northfield ("Northfield") granted a nonexclusive cable television franchise to NorCom Video, Inc. ("NorCom"). Ordinance 444, Ordinance Summary, dated November 21, 1983 (now codified at Northfield Ordinance § 1520:00, et seq.) ("Franchise"). The ordinance required NorCom to provide public access channel(s) for use by the public and pay 5 percent of its gross revenues to Northfield as a franchise fee.

In 1985, Northfield and NorCom amended the franchise agreement to relieve NorCom of its obligation to provide local origination and public access staff, equipment, and associated commitments and to impose instead an obligation to pay to Northfield an annual grant for support of local origination and public access television activities. Cable Communications Offering, Amendment Agreement No. 1, City of Northfield, dated May 1, 1985 ("Amendment Agreement"). Northfield delegated the duties to administer/operate the use and maintenance of certain local origination/public access equipment and to operate

the public access channels to NTV 26, a nonprofit corporation of the State of Minnesota. Agreement for the Delegation of Public Access/Local Origination Cable Communications Functions, dated April 9, 1985 ("Delegation Agreement").

The Delegation Agreement also provided that NTV 26 would receive from Northfield 75 percent of the cable franchise fee collected by Northfield, plus the amount of the grant Northfield received under the amended cable franchise agreement with NorCom. More or less funds would be allocated annually upon request of NTV 26. NTV 26 has never requested an adjustment and Northfield has always paid according to the terms of the Delegation Agreement.

The amended Franchise and Delegation Agreement are still in effect and have not been renegotiated or reconsidered. The Franchise and the Delegation Agreement were not publicly bid, but were awarded upon request for proposals.

Northfield's present mayor was an incorporator of NTV 26. He is currently one of its directors and as its primary employee, he is responsible for NTV 26's operation. He receives an annual salary of $25,000 from the corporation.

The service area of NTV 26 comprises the City of Northfield the City of Dundas, and some neighboring townships.

During the period 1990 to 1994, the present mayor of Northfield served as a city council member. Then in 1994, he was elected to his present office of mayor.

You ask substantially the following questions:

## QUESTION ONE

Is the mayor of Northfield prohibited from serving as mayor because he is an employee, incorporator and director of Northfield's public access cable television provider?

## OPINION

We answer your question in the negative.

As a general proposition, circumstances involving a public official's personal interest in official contracts are addressed by Minn. Stat. § 471.87 which provides:

> Except as authorized in section 471.88, a public officer who is authorized to take part in any manner in making any sale, lease or contract in official capacity shall not voluntarily have a personal financial interest in that sale, lease, or contract or personally benefit financially therefrom. Every public officer who violates this provision is guilty of a gross misdemeanor.

According to the facts .. certained, the mayor who is also a member of the council has a direct financial interest in NTV 26 by virtue of his position as a director and primary employee who receives an annual salary.[1] NTV 26 has a contract with Northfield which has been in place since 1985. Delegation Agreement. The contract funds NTV 26 with cable franchise fees and additional grant funds received by Northfield from its franchisee, NorCom. Amendment Agreement, paragraph 2; Delegation Agreement, paragraph 2. The Amendment Agreement with NorCom may be renegotiated every three years with respect to fees paid. Amendment Agreement, paragraph 2. The Delegation Agreement with NTV 26 may be amended annually to change the amount of the funds allocated to NTV 26. Delegation Agreement, paragraph 2. In both cases, Northfield, as the franchiser and contractor, respectively, would be the entity renegotiating the fee structures through its council. Thus it appears that the mayor has a direct financial interest in one contract, (the Delegation Agreement) and an indirect interest in a second contract (the Franchise Agreement) both of which are made and amended by the council of which he is a member. Thus, if we consider only section 471.87, the mayor would be in violation of that section and subject to the penalties provided unless one of the exceptions contained in section 471.88 applied.

However, we must also consider other relevant legislation which pertains more specifically to potential conflict of interest situations related to cable television franchises. Minn. Stat. § 238.15 (1996) provides:

---

[1] It is assumed that the mayor receives no financial benefit ι  .: his position as incorporator, since NTV 26 is a Minnesota nonprofit 501(c)(3) corporation.

> Members of any elected body granting [cable communications] franchises and employees of any franchising body who would be directly involved in the granting or administration of franchises for cable communications and who are employed by or knowingly have any financial interest in any cable communications company, bidding on such franchise, or the cable communications company granted the franchise, or their subsidiaries, major equipment or program supplier shall abstain from participation in the franchising of a cable communications company or the administration of such franchise.

This plain language appears to contemplate that some members of elected bodies granting or administering franchises will have a financial interest in cable communications companies granted a "franchise" or in its subsidiaries. In contrast to the broad prohibitory terms of section 471.87 discussed above, however, section 238.15 addresses the conflict by prohibiting the interested member from any participation in the granting or administration of the franchise.

In that respect, section 238.15 presents a situation similar to that described in Op. Atty. Gen. 90, June 9, 1994, wherein we concluded that a Housing and Redevelopment Authority ("HRA") commissioner could enter contracts with the Housing and Redevelopment Authority, if the notice and non-participation requirements of Minn. Stat. § 469.009 (1996) governing potential conflicts of interest involving HRA commissioners were observed. Although section 238.15 does not contain a notice provision, it does implicitly permit an elected official to retain his or her financial interest in a cable communications company granted a franchise or in its subsidiaries if he or she abstains from participation in the franchising of the company or the administration of such franchise.

Our analysis in Atty. Gen. Op. 90, June 9, 1994, we believe applies to this situation as well. In that opinion we concluded that the "special" statutory provisions relating to HRA commissioners' contractual interests prevailed over the more general prohibition contained in section 471.87.[2] For similar reasons we believe that the non-participation provisions of Minn.

---

[2] Minn. Stat. § 645.26, subd. 1 (1996) provides:

> When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be

Stat. § 238.15 apply to members of an elected body having a personal financial interest in any cable communication company or its subsidiary which bid on a contract or which is a party to a contract that is being administered by the elected body. In the June 9, 1994 opinion we also noted that

> Another arguable approach to the same result may be to observe that, by virtue of the language contained in Section 469.009, a commissioner who knows, or has reason to know of a personal conflict of interest in an HRA project is simply not "authorized to take part" officially in making contracts associated with that project, and is thus not technically within the prohibition of Section 471.87.

Likewise in this case, the mandate in section 238.15 that elected members of a franchising body abstain from participation in franchise granting or operation actions would indicate that the official is not authorized to take part in franchising decisions in his or her official capacity.

While there may be arguments to the contrary, we believe that the Delegation Agreement at issue is covered by section 238.15. Minn. Stat. § 238.02, subd. 5 (1996) defines "franchise" to mean "any authorization granted by a municipality in the form of a franchise, privilege, permit, license or other municipal authorization to construct, operate, maintain, or manage a cable communications system in any municipality." Additionally, Minn. Stat. § 238.081, subd. 9 (1996) permits a franchising authority to franchise a nonprofit owned system, while Minn. Stat. § 238.081, subd. 4(3)(iv) (1996) includes in its listing of areas to be covered in the franchise "the number of channels and services to be made available for access cable broadcasting." Thus, in light of the broad definition of "franchise," the fact that public access is part of cable service covered by chapter 238 and that a franchising authority may grant a franchise to a nonprofit

---

> given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

corporation, the Delegation Agreement does appear to be covered by the cable communication laws including section 238.15.

Therefore, we conclude that the mayor in these circumstances would not be affected by the conflict of interest provision of section 471.87, but would be governed by the requirements of section 238.15, requiring him to abstain from participation in the franchising of the cable communications company or the administration of that franchise.

In reaching this conclusion we have considered Op. Atty. Gen. 90a-1, July 12, 1973, where we stated that a person may not serve on a village council while a franchise agreement is in effect when the person had a financial interest in the franchisee company, without first divesting himself of his interest. That opinion addressed Minn. Stat § 412.311 (1971) which provided in part:

> Except as provided in sections 471.87 to 471.89, no member of the village council shall be directly interested in any contract made by the council.[3]

It did not directly address section 471.87 or section 471.88 except to note in a footnote that none of the exceptions were applicable. Neither did that opinion address section 238.15. Section 238.15 was enacted during the 1973 legislative session and did not become effective until August 1, 1973, after the opinion was issued. Therefore, since no exceptions to the conflict of interest rule existed at that time for franchises, that opinion must be read in its historic context and is superseded to the extent inconsistent with this opinion.

---

[3] Section 412.311 is applicable only to statutory cities.

In light of our conclusion here it is not necessary to address your remaining questions concerning measures which might be taken by the mayor or council to avoid further violations of Minn. Stat. § 471.87.

Sincerely,

HUBERT H. HUMPHREY III
Attorney General

KENNETH E. RASCHKE, JR.
Assistant Attorney General

AG:30404 v1